USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/1/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEAN STREET CAPITAL ADVISORS,
LLC,

         Plaintiff,

  -v-

OTOKA ENERGY CORP., *et al.*,

         Defendants.

No. 15-cv-824 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

  Plaintiff Dean Street Capital Advisors, LLC ("Dean Street") brings this diversity action

against Defendants Otoka Energy LLC (formerly Otoka Energy Corporation) ("Otoka"), Amador

Biomass, LLC ("Amador"), Buena Vista Biomass Power, LLC ("BVBP"), and Buena Vista

Biomass Development, LLC ("BVBD") (collectively, "Defendants"), alleging that Defendants

breached an oral agreement to pay Plaintiff $200,000 in broker fees related to the financing of a

power plant project in California. (Doc. No. 21 ("Am. Compl.") at ¶ 1.)

  Now before the Court is Defendants' motion to dismiss the amended complaint under

Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction on the grounds that

Defendants do not have sufficient contacts with the State of New York to establish personal

jurisdiction under New York's long arm statute, and that Plaintiff is not a third-party beneficiary

of contracts that provide for personal jurisdiction over Defendants in the State of New York.

(Doc. No. 24.)   For the reasons that follow, the court DENIES Defendants' motion without

prejudice to renewal following limited jurisdictional discovery.

I. Background

A. Facts[1]

In 2012, Defendants Amador, BVBD, and Otoka, along with Antrim Corp., a subsidiary of State Street Bank & Trust, closed a $35 million deal to finance a power plant project in Ione, California, near Sacramento. (Am. Compl. ¶ 16.)  To memorialize their agreement regarding the transaction, they executed two contracts:  the Purchase and Sale Agreement (Aff. of David C. Marden, dated May 15, 2015 ("Marden Aff."), at ¶ 3 and Ex. 2 ("PSA")) and the Member Interest Purchase and Equity Capital Contribution Agreement (*id.* at Ex. 3 ("ECCA")) (collectively, the "Agreements").  These contracts state that the parties consent to personal jurisdiction for disputes arising under the Agreements in the state and federal courts of New York. (PSA at § 11.15; ECCA at § 10.6.)

Plaintiff, an organization that provides consulting services to entities seeking to raise capital, claims that it located funding for the power plant transaction and that, therefore, Defendants owe it a $200,000 finder's fee pursuant to a verbal agreement.  Specifically, Plaintiff alleges that it was retained by Defendant BVBD to "provide services in connection with the purchase and sale of the Biomass Facility located in Ione, California from Defendant BVBD to Defendant Amador and the ECCA tax equity transaction among the Defendants Otoka, Amador and the Antrim Corporation that closed on or about June 28, 2012." (Am. Compl. ¶ 16.)  Indeed, schedules annexed to the Agreements emphasized that pursuant to a "verbal agreement" with

---

[1] The following facts, unless otherwise noted, are drawn from the amended complaint (Doc. No. 21) and from the documents attached thereto, incorporated therein by reference, or otherwise integral to Plaintiff's claims, as well as matters of which this Court may take judicial notice. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  In resolving the instant motion, the Court has also considered Defendants' memorandum of law in support of their motion to dismiss (Doc. No. 25 ("Mem.")), Plaintiff's memorandum of law in opposition (Doc. No. 29 ("Opp'n")), and Defendants' reply (Doc. No. 30 ("Reply")), as well as the affidavits and exhibits attached thereto (Doc. Nos. 26–28).

BVBP, Plaintiff was entitled to receive $200,000 upon the closing of the transaction.[2]  (Marden

Aff. at ¶ 5 and Ex. 4.)  Plaintiff did not receive the $200,000.

Plaintiff commenced this lawsuit on February 4, 2015 (Doc. No. 1), and Defendants

moved to dismiss for lack of personal jurisdiction on May 15, 2015 (Doc. No. 24).  The motion

was fully submitted on June 5, 2015.  (Reply.)

II.  LEGAL STANDARD

"'The plaintiff bears the burden of establishing that the court has jurisdiction over the

defendant when served with a Rule 12(b)(2) motion to dismiss.'"  *Wilder v. News Corp.*, No. 11-

cv-4947 (PGG), 2015 WL 5853763, at \*5 (S.D.N.Y. Oct. 7, 2015) (quoting *Whitaker v. Am.*

*Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).  "However, where a court rules on a

12(b)(2) motion based on pleadings and affidavits, the plaintiff is only required to make a *prima*

*facie* showing of jurisdiction over the defendant."  *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d

424, 440 (S.D.N.Y. 2008); *see Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d

Cir. 2010).  For the purpose of resolving a 12(b)(2) motion, a district court must construe the

pleadings and affidavits in the light most favorable to the plaintiff.  *Chloe*, 616 F.3d at 163.

A federal district court sitting in diversity may exercise personal jurisdiction over the

parties to the same extent as a state court of general jurisdiction in the state in which the federal

court sits.  Fed. R. Civ. P. 4(k)(l)(A); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,

305 F.3d 120, 124 (2d Cir. 2002).  Accordingly, in diversity actions, federal courts in New York

analyze motions made pursuant to Federal Rule of Civil Procedure 12(b)(2) in a two-step

---

[2] Plaintiff asserts claims against all Defendants named here on the grounds that "[p]ursuant to the terms of the ECCA, all obligations of BVBD to Plaintiff were assumed and guaranteed in writing by Defendant Amador, and the obligations of Defendant Amador were also assumed and guaranteed in writing by Defendant BVBP." (Opp'n at 3.) The Court notes that no Defendant, at least for purposes of the present motion, claims that it is an improper party in this matter.

process.  "First, the court must determine if New York law would confer upon its courts the jurisdiction to reach the defendant . . . ."  *Bank Brussels Lambert*, 305 F.3d at 124.  Second, "[i]f . . . there is a statutory basis for jurisdiction, the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment."  *Id.*

### III. DISCUSSION

Defendants move to dismiss Plaintiff's amended complaint on the ground that they lack sufficient contacts with New York to be subject to personal jurisdiction under the State's long-arm statute.  They further argue that Plaintiff lacks the right to invoke the jurisdiction clause in either of the Agreements in order to initiate a lawsuit in the Southern District of New York.  The Court will address each of these arguments in turn.

### A. Long-Arm Jurisdiction

The Court may exercise personal jurisdiction over Defendants if Plaintiff establishes "a statutory basis for exercising personal jurisdiction" under New York's long-arm statute.  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013).  The New York State long-arm statute confers personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state" for claims that directly arise out of a defendant's activity in New York.  N.Y. CPLR § 302(a)(1); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).  "New York courts define 'transact[ing] business' as purposeful activity – 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

4

Courts consider the totality of a defendant's activities to determine if that defendant's transaction of business constitutes purposeful activity. *Id*.

Here, Plaintiff alleges no facts to suggest that Defendants transact business within the State of New York. Instead, Plaintiff depends exclusively on the forum selection clauses of the PSA and ECCA. (Opp'n at 11.) Accordingly, Plaintiff cannot establish personal jurisdiction over Defendants based on the New York State long-arm statute.

### B. Plaintiff's Status under the PSA and ECCA

The PSA and ECCA Agreements, upon which Plaintiff relies for purposes of personal jurisdiction, each contain a forum selection clause establishing personal jurisdiction over the parties to those Agreements in this District. (PSA at § 11.15 ("[E]ach party hereto submits to the personal jurisdiction of the courts of the State of New York and the federal courts of the United States sitting in New York County . . . ."); ECCA at § 10.6 ("[T]he state or federal courts located in the Borough of Manhattan, State of New York . . . shall have *in personam* jurisdiction over each of [the parties to the ECCA] for the purpose of litigating . . . .").) Indeed, the parties do not dispute that Defendants would be subject to suit in the Southern District of New York for disputes related to the power plant transaction brought by *signatories* to the Agreements. They disagree, however, as to whether a non-signatory third party like Plaintiff has the authority to invoke the Agreements' terms.

"[G]enerally only parties in privity of contract may enforce terms of the contract such as a forum selection clause." *Freeford Ltd. v. Pendleton*, 53 A.D.3d 32, 38 (1st Dep't 2008). Courts make an exception, however, when a party qualifies as an intended third-party beneficiary of the contract under which they seek to bring suit. *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d

219, 251 (2d Cir. 2006) ("[T]o succeed on a third party beneficiary theory, a non-party must be

the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is

owed."); *Freeford Ltd.*, 53 A.D.3d at 39. To determine whether a party is an intended third-party

beneficiary, "a court 'should consider the circumstances surrounding the transaction as well as

the actual language of the contract.'" *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital*

*Mgmt. LLC*, 692 F.3d 42, 52 (2d Cir. 2012) (quoting *Subaru Distribs. Corp. v. Subaru of Am.,*

*Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (internal quotation marks omitted)).

### 1.  Contract Language

Here, the Court's analysis focuses on the text of the so-called "negating clauses"

contained in Section 11.12 of the PSA and Section 10.12 of the ECCA, which Defendants allege

bar this action. Under New York law, contract interpretation takes place in two stages. First, a

court must determine, as a matter of law, whether the disputed contractual terms are ambiguous.

*See Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010)

(citations and internal quotation marks omitted). "No ambiguity exists where the contract

language has a definite and precise meaning, unattended by danger of misconception in the

purport of the [contract] itself, and concerning which there is no reasonable basis for a difference

of opinion." *Id.* at 467 (citations and internal quotation marks omitted). If a court concludes that

the contractual terms are "complete, clear and unambiguous," it must proceed to interpret those

terms according to their "plain meaning." *Id.* (citations and internal quotation marks omitted).

However, if a court finds that the contractual language is ambiguous, then it must rely on

extrinsic evidence to determine the contract's meaning.

Under the heading "No Third-Party Beneficiary," Section 11.12 of the PSA states:

> [e]xcept as provided hereinbelow, the terms and provisions of this Agreement are intended solely for the benefit of each party hereto and their respective successors or permitted assigns, and it is not the intention of the parties to confer third-party beneficiary rights upon any other Person other than any Person entitled to indemnity under Article IX [a section of the contract not relevant to this dispute] . . . .

(PSA at § 11.12.)  Similarly, the ECCA contains a Section entitled "Assignability and Parties in Interest," which includes even more restrictive language, noting that "[n]othing in this agreement will confer upon any person or entity not a party to this Agreement, or the legal representatives of such person or entity, any rights or remedies of any nature or kind whatsoever under or by reason of this Agreement."  (ECCA at § 10.12.)  Plaintiff does not dispute that these negating clauses are intended, as a general matter, to exclude potential third parties from enforcing the terms of the Agreements.  (Opp'n at 6.)  Nevertheless, Plaintiff argues that the Agreements do not exclude *Plaintiff* from availing itself of the Agreements' forum selection clauses to assert a claim against Defendants in this District in order to obtain its brokerage fee.

First, Plaintiff contends that the Agreements' negating clauses are mere boilerplate that fail to mention Plaintiff by name.  (Opp'n at 8–11.)  This argument is a nonstarter.  Particularly where parties are sophisticated, the Court will not second guess their election of stock language and will accord full force and effect to the text of their agreement. *See, e.g., In re Victory Mkts., Inc.*, 221 B.R. 298, 304 (2d Cir. 1998) ("[E]ven if the operative provisions [in the relevant contract] were to be considered boilerplate, we cannot accept the contention that language of that character is to be disregarded . . . .").  Here, Defendants sought to foreclose the claims of unforeseen third parties; clearly they had no obligation to specifically name every possible third party claimant in custom-made, and presumably lengthy, contractual language.

Second, Plaintiff asserts that it is an intended beneficiary based on schedules annexed to

the Agreements identifying Plaintiff as a broker to whom a $200,000 payment is owed. Specifically, Section 3.19 of both the ECCA and PSA Agreements, entitled "Brokers," notes that, "[e]xcept as set forth on [the corresponding] Schedule 3.19, no broker, finder, investment banker, or other person is entitled to any brokerage, finder's or other fee or commission" in connection with the power plant transaction. "Schedule 3.19," referenced in the above-quoted text and annexed to the agreement, provides:

> Under the terms of a verbal commitment by Buena Vista Biomass Development LLC, Dean Street is entitled to receive $200,000 upon the close of (1) the Purchase and Sale Agreement by and between Amador Biomass, LLC and Buena Vista Biomass Development, LLC and (2) the Equity Capital Contribution Agreement among Otoka Energy Corporation, Amador Biomass LLC and Antrim Corporation.

(Marden Aff. at ¶ 4 and Ex. 3 (PSA Schedule); *id.* at Ex. 4 (ECCA Schedule.)  The ECCA project budget, attached to the ECCA contract, also includes a line item indicating a projected $200,000 payment to Plaintiff. (Marden Aff. at ¶ 5 and Ex. 6.)

Courts interpreting contracts that include a negating clause but that also mention a third party, in a schedule or otherwise, look to the specific text of the negating clause to determine the parties' intent.  For example, in *India.com, Inc. v. Dalal*, the Second Circuit examined a negating clause providing that "[n]either this Agreement [n]or any provision hereof nor any Schedule, exhibit, certificate or other instrument delivered pursuant hereto . . . is intended to create any right, claim or remedy in favor of any person or entity" other than the signatories and their permitted assigns.  412 F.3d 315, 318 (2d Cir. 2005).  The Court of Appeals affirmed the lower court's dismissal of the case, holding that an annexed schedule identifying the plaintiff as "a broker entitled to a commission" was "insufficient to confer third-party status where the parties themselves are explicit that they did not intend to create third-party beneficiaries" by a mere

8

mention in the agreement or its schedules. *Id.* at 321–22.

In contrast, the Second Circuit reached the opposite conclusion in *Bayerische Landesbank*, where the agreement in question provided that "no other person [apart from the signatories, their successors, and their assigns] shall have any right, benefit or interest under or because of this Agreement, except as otherwise specifically provided herein."  692 F.3d at 53. Reasoning that "herein" was an ambiguous term, since it "might be read to refer . . . to only section 29 [in which the term appeared], [but] could just as reasonably be read to refer . . . to the PMA [agreement at issue] as a whole," including sections that referenced the plaintiffs seeking to bring suit as intended third-party beneficiaries, *id.* at 53–54, the Second Circuit found the negating clause to be ambiguous and reversed the lower court's decision dismissing the complaint, *id.* at 58.

As with the contractual provision in *India.com*, the ECCA clearly excludes all third parties and unambiguously states that "[n]othing in this Agreement" will confer a third-party right. *See In re Lehman Bros. Holdings Inc.*, 479 B.R. 268, 275 (S.D.N.Y. 2012) (enforcing a negating clause similarly providing that "[n]othing in this Agreement shall create or be deemed to create any third party beneficiary rights" despite reference to the plaintiff in an attached schedule). The PSA, however, is not so explicit. There, the contract excludes third-party claims "[e]xcept as provided hereinbelow." (PSA at § 11.12.)  While "hereinbelow" clearly does not apply to terms earlier in the document, the word suffers from the same ambiguity as the word "herein" in the *Bayerische Landesbank* agreement.  Put simply, it is not at all clear whether the word "hereinbelow" refers only to Section 11.12 of the PSA, or whether the word also applies to all subsequent portions of that agreement, including Section 3.19's reference to Schedule 3.19

9

and Plaintiff's fee. *See, e.g., Black's Law Dictionary* 842 (10th ed. 2014) (defining "hereinafter" as "later in this document"). Moreover, the sentences following the term in Section 11.12 do not appear to limit the scope of "hereinbelow"; rather, they provide further exemptions from the negating clause tailored to specific groups of rights holders discussed later in the Agreement. Under these circumstances, and in light of the governing case law, the Court concludes that, while the ECCA unambiguously excludes Plaintiff's claim – and therefore precludes Plaintiff from asserting jurisdiction based on that Agreement, the PSA is ambiguous in its terms and further inquiry is required to discern its meaning.

## 2. Circumstances of the Transaction

Since the Court finds that the term "hereinbelow" in the PSA is ambiguous, it must next look to the circumstances surrounding the PSA agreement and its execution to determine whether Plaintiff qualifies as an intended third-party beneficiary. *See Septembertide Publ'g, B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 679 (2d Cir. 1989). Specifically, the Court must determine if the parties are "closely related" such that it was "foreseeable" or "intended" that the third-party beneficiary would seek to invoke the forum selection clause. *In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 670 (S.D.N.Y. 1997). Here, in an understandable effort to avoid the expense of discovery, the parties rely entirely on the text of the Agreements to explain their relationship and the signatories' contractual intent. Nevertheless, without additional facts developed in discovery, the Court is simply not in a position to assess the circumstances of the transaction at issue and determine whether it resolves the ambiguity in the PSA's negating clause. Accordingly, with respect to Plaintiff's claims under the PSA, the Court denies Defendants' motion without prejudice to renewal following the completion of limited discovery

regarding the intent of the contracting parties concerning the "hereinbelow" clause.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is DENIED without prejudice to renewal. IT IS FURTHER ORDERED THAT the parties shall submit a joint letter to the Court by February 8, 2016, setting forth a proposal for the scope and duration of the limited jurisdictional discovery required to resolve this issue. The parties are reminded that, consistent with this Order, all further claims for third-party beneficiary status must flow from the PSA, and not the ECCA. The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 24.

SO ORDERED.

Dated:    February 1, 2016
          New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

11